Randy J. Harvey, O.S.B. #116714
Email: randy@elpnw.com
Jameson E. Gideon, O.S.B. #202871
Email: jameson@elpnw.com
Patrick G. Conroy, O.S.B. # 223806
Email: patrick@elpnw.com
**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
Telephone: 503-822-5340
Facsimile: 503-433-1404

Of Attorneys for Plaintiff Amanda Zabloudil

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **AMANDA ZABLOUDIL**, an individual,<br><br>                    Plaintiff,<br><br>         v.<br><br>**LEGACY HEALTH SYSTEM CPC, LLC,**<br>a domestic limited liability health care<br>company,<br><br>                    Defendant. | Case No. 3:23-cv-00442<br><br>**COMPLAINT**<br><br>**42 U.S.C. §§ 12101** *et seq.,*<br>**ORS § 659A.112, ORS 653.641,**<br>**COMMON LAW WRONGFUL**<br>**TERMINATION**<br><br>**Claim: $1,800,000**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges by and through her undersigned legal counsel as follows:

## I.      INTRODUCTION.

1.      Amanda Zabloudil (hereinafter "Plaintiff") began working for Legacy Health (hereinafter

"Defendant") in or about 1997.

**PAGE 1 – COMPLAINT**

2.     Plaintiff became a registered nurse assigned to the pediatrics resource nursing pool, which included serving in the Neonatal Intensive Care Units, Pediatric Intensive Care Units, acute care floors, and other related departments.

3.     Plaintiff's serious health condition required multiple corrective surgeries and regular doctor's visits throughout her life. Still, she did not let that get in the way of her career as a registered nurse.

4.     Plaintiff requested an accommodation for her serious medical condition, and Defendant counted the weeks Plaintiff was awaiting an accommodating position against her maximum leave allotment of 52 weeks within 12 months.

5.     Plaintiff was terminated on or about July 1, 2021, under a misapplication of Defendant's leave policy.

**II.     JURISDICTION AND VENUE.**

5.     This is an action for violations of the United States Constitution brought under 42 U.S.C. §12101 *et seq*. This Court has original jurisdiction over Plaintiff's federal claims under 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 because those claims arise from a common nucleus of operative fact. This Court has personal jurisdiction over Defendant because Defendant is a local domestic nonprofit in the State and this District, and because the acts complained of occurred in this State and this District and gave rise to the claims alleged. Lastly, this Court has diversity jurisdiction of Plaintiff and Defendant, who are residents of separate states, because Plaintiff resides in Arizona and Defendant resides in Oregon and because the amount in controversy exceeds $75,000 under 28 U.S.C. §1332.

///

PAGE 2 – COMPLAINT

6.      The venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendant resides in this District and Division. All of the events or omissions giving rise to Plaintiff's claims presented in this Complaint occurred in this District and Division.

7.      Plaintiff filed a discrimination complaint against Defendant with the Equal Employment Opportunities Commission ("EEOC") by cross-filing with the Oregon Bureau of Labor and Industries ("BOLI") within the applicable statutory period concerning Plaintiff's claims arising under A.D.A. and received a Right-to-Sue letter from BOLI on December 27, 2022. The Plaintiff timely filed within ninety days of Plaintiff's Right-to-Sue letter from BOLI with Case Number DPEMDP211227-12404 and EEOC Case Number 38D-2022-00163C (Exhibit A). The Right to Sue letter from EEOC should be forthcoming. Plaintiff has timely filed under O.R.S. 659A.880.

## III.    PARTIES.

8.      The Plaintiff was a resident of Eagle Creek, Oregon, at material times. Plaintiff now lives in Arizona. Defendant employed Plaintiff from 1997 until her termination on July 1, 2022. Plaintiff is currently on disability.

9.      At all material times, Defendant is a domestic limited liability healthcare company operating healthcare system existing under the laws of the State of Oregon, with its PPB headquarters located at 1919 NW Lovejoy St., Portland, Oregon.

## IV.    FACTUAL ALLEGATIONS.

10.     On or about June 22, 1997, Plaintiff began working for Defendant.

11.     On or about July 6, 1998, Plaintiff begins working as a nurse in the pediatrics resource pool, including the acute care floors.

///

**PAGE 3 – COMPLAINT**

12.    On or about March 16, 2020, Dr. James Kyser, M.D. ("Kyser"), completes and submits to Defendant's leave administrator a "Certification of Health Care Provider for Employee's Serious Health Condition" form, diagnosing Plaintiff with a serious, permanent medical condition that required multiple surgeries.

13.    When the COVID-19 virus struck Oregon, Plaintiff's physicians recognized that due to Plaintiff's serious medical condition, she was at high risk for complications and death if she contracted the novel coronavirus. Because of this, Plaintiff's physicians recommended and requested an accommodation to keep Plaintiff out of contact with potential COVID-19 patients.

14.    On or about March 23, 2020, Plaintiff underwent unsuccessful surgery at Defendant's facility. Plaintiff recovered after a week and was physically able to return to work.

15.    On or about April 6, 2020, Plaintiff informed her supervisor, Roxann Peterson ("Peterson"), that she was reaching out, attempting to return to work in some capacity, requesting an accommodation to avoid direct exposure to COVID-19 patients. She made this request due to her serious medical condition. She asked Peterson to reply with the "best possible arrangements for Plaintiff's safe return to work.

16.    Peterson informed Plaintiff that no open positions were available, and many nurses were out of work. Defendant recommended that Plaintiff remains on medical leave until an accommodating position is found.

17.    On information and belief, Defendant could provide accommodating positions for other employees but failed or refused to find one for Plaintiff.

18.    On or about April 9, 2020, Mindy Harrington, F.N.P. ("Harrington"), certifies by a letter stating that "[Plaintiff] is a patient known to our clinic who has significant underlying medical

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

conditions. It is my medical opinion that [she] is at very high risk of complications or death if they contract the COVID-19 infection . . .. Please excuse [her] from any work duties that involve contact with persons who may have COVID-19 illness."

19.    On or about April 13, 2020, Kyser completes and submits to Defendant's leave administrator a "Certification of Health Care Provider for Employee's Serious Health Condition" form, diagnosing Plaintiff with a serious medical condition and advising precautions regarding exposure to COVID-19 and extended leave time.

20.    On or about April 29, 2020, Kyser signed a notice submitted to Defendant indicating that Plaintiff "can return to work ONLY with no interaction with potential/determined COVID-19 positive patients." Harrington also submitted a letter to Defendant requesting "accommodations for [Plaintiff] to enable [Plaintiff] to work safely."

21.    On or about April 29, 2020, Peterson acknowledged Plaintiff's requests to return to work with an accommodation to avoid potential COVID-19 patients and told Plaintiff that she would "keep looking [for a position] and put out some feelers."

22.    On or about April 30, 2020, Defendant's Leave Administrator notified Plaintiff's supervisors that Plaintiff could return to work "[n]o interaction with potential/determined COVID-19 positive patients."

23.    On or about May 1, 2020, Peterson consulted Mary Starmont ("Starmont") in the human resources department discussing how to meet Plaintiff's request to return to work with this accommodation.

23.    On or about May 13, 2020, Peterson notified Plaintiff that she might be able to find her a COVID-19 "screener" position but that this position would not meet the accommodation

**PAGE 5 – COMPLAINT**

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

requirement of keeping Plaintiff out of contact with COVID-19 patients. Plaintiff could not accept this position as it was antithetical to her accommodation request.

24.      On or about May 22, 2020, Plaintiff again asked Peterson to provide positions that can accommodate her disability, specifically noting her medical condition and reiterated to Peterson that she was capable of performing all her normal job duties with the only accommodation being she cannot hold a position that requires exposure to COVID-19 patients.

25.      Between April 6 and May 22, 2020, Plaintiff contacted her supervisors multiple times to see if an accommodating position was available. Each time her inquiries were ignored or met with unhelpful responses.

26.      On or about May 22, and May 27, 2020, Plaintiff finally connected with Ashley Breen ("Breen") and Meagan Blackburn ("Blackburn"), who were able to find her an accommodating position in the employee health department.

27.      Defendant counted these weeks when trying to find an accommodation as continued leave of absence for purposes of FMLA and Defendant's leave of absence policy.

28.      On or about May 28, 2020, Plaintiff began working an accommodating position in the employee health department.

29.      Under the employee health department, Plaintiff worked with onboarding new employees by providing immunizations and bloodwork. This position was close to the COVID-19 testing area.

30.      Plaintiff was assigned additional duties in the COVID-19 hotline program, taking calls, providing information to the public, and returning calls to patients.

///

**PAGE 6 – COMPLAINT**

31.    Plaintiff received training and learned that patients were experiencing extended wait times on return calls, around 48 hours, and that the COVID-19 hotline program was under immense staffing demands. Additionally, she learned that this program needed additional nursing staff as far back as April when Plaintiff first requested her accommodation.

32.    Employee Health Supervisor and Manager of the COVID-19 hotline program, Brian Goodin ("Goodin"), told Plaintiff that the employee health department had been short-staffed. He stated that positions had been open for some time and was unsure why  Defendant didn't place Plaintiff in one of the vacant positions.

33.    On information and belief, four (4) other nurses on light-duty restrictions were assigned to the COVID-19 hotline program.

34.    Plaintiff notified her supervisors in or around July 2020 that she was diagnosed with heart failure.

35.    That same week in or around July 2020, Defendant notified Plaintiff they were reassigning her from the COVID-19 hotline program to the heart failure hotline, which included calling back patients and informing them of their heart failure diagnosis.

36.    Plaintiff, a pediatric nurse, unlike several other light-duty nurses on the COVID-19 hotline program, notified her supervisor that she was unsure how to counsel heart failure patients and had little experience with adult patients.

37.    On information and belief, despite having other light-duty nurses on the COVID-19 hotline program who were both better suited for the heart failure hotline and not currently diagnosed with heart failure themselves, Plaintiff was ordered to undergo a 6-hour Continued Education Unit (C.E.U.) training for the heart failure hotline.

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

38.     On or about September 30, 2020, Plaintiff underwent a second surgery at Defendant's facility to correct her serious medical condition. The surgery failed, resulting in an injury that left Plaintiff physically disabled and incapable of returning to work for several weeks.

39.     Plaintiff had to take an extended medical leave on short-term disability due to her serious medical injury sustained during the failed surgery.

40.     While in recovery, on or about October 27, 2020, Defendant deactivated Plaintiff's company email account.

41.     Plaintiff had a slower recovery than anticipated due to the extent of her surgical injury. On or about December 4, 2020, Plaintiff notified human resources that she could not return to work before the holidays as her supervisor had required her to hold her position open.

42.     On or about December 7, 2020, Karen Hardcastle ("Hardcastle"), Defendant's benefits specialist in the human resources department, informed Plaintiff that her benefits and employment would end on July 1, 2021, if she could not return to work before that date.

43.     Plaintiff raised concerns that Defendant calculated her absence inaccurately.

44.     On or about December 8, 2020, Hardcastle explained to Plaintiff that the leave of absence policy limited employee eligibility to 12 months, or 52 weeks, of leave within 12 months, calculated on a "rolling lookback" based on the first day of the leave period.

45.     Additionally, Defendant explained that if Plaintiff was released to return to work within that 12-month period and her previous department could not hold her position, she would have 30 days to find a new position within the company.

///

///

PAGE 8 – COMPLAINT

46.     Defendant stated if Plaintiff were not released to return to work until after the 12-month window, her employment would terminate, and she would have to apply for open positions as a non-employee.

47.     On or about April 23, 2021, Plaintiff contacted Cindy Hill ("Hill"), Chief Nursing Officer of Randall Children's Hospital at Legacy Emanuel, to discuss possible employment opportunities within the company that would meet Plaintiff's accommodation needs.

48.     In or around early May, Plaintiff again reached out to Hill, still looking for an accommodating position. On or about May 16, 2021, Hill responded to Plaintiff's requests and agreed to schedule a 30-minute phone meeting to discuss the situation.

49.     Plaintiff contacted her former manager, the human resources department, the employee relations department, the patient relations department, and even her primary care physicians attempting to find a position that would accommodate her disabilities.

50.     The Plaintiff now needed both accommodations due to her high-risk COVID-19 exposure and because she faced limitations caused by the surgery injury. Plaintiff was in rehabilitation, hoping to return to her full duty and previous position as a bedside nurse.

51.     Plaintiff was cleared to return to work.

52.     On or about June 10, 2021, Plaintiff notified Peterson that she was applying for positions in pediatrics that would meet her accommodation needs while also trying to rehab to work as a bedside nurse again eventually.

53.     On or about June 15, 2021, Defendant scheduled Plaintiff to meet with Hill via remote video conference, but Plaintiff could not attend due to an urgent medical event.

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

54.     On or about June 24, 2021, Plaintiff met with Hill via remote video conference to discuss returning to work in an accommodating position.

55.     On or about June 24, 2021, Plaintiff received contact information for Ecaterina Goldashkin ("Goldashkin") in the human resources department and emailed her inquiring about returning to work in a position that would accommodate her disability. Plaintiff stated her need for a job was urgent since her automatic termination date of July 1 was approaching.

56.     On or about June 29, 2021, having not received a response from Goldashkin, Plaintiff contacted Goldashkin again, asking to return to work in an accommodating position and a breakdown of how her 12 months of leave were calculated.

57.     Plaintiff again reached out to Hill, saying, "[f]or months I have reached out to my manager, human resources, employee relations, patient relations and even have enlisted my primary care provider to try to negotiate a position within my temporary limitations to no avail."  Plaintiff made it clear that she was cleared to return to work and wanted to maintain her benefits and employment with Defendant.

58.     On or about July 1, 2021, Plaintiff's employment was terminated under the terms of Defendant's leave of absence policy without Defendant providing any available accommodations.

59.     On or about July 5, 2021, Goldashkin responded to Plaintiff's requests, saying she would notify Mary Starmont ("Starmont") to help her find placement. Starmont contacted Plaintiff regarding open positions "now that [her] Legacy medical leave of absence is ending," even though Defendant's leave of absence policy had automatically terminated her employment. Goldashkin also revealed how Defendant had calculated Plaintiff's 12 months of leave.

///

**PAGE 10 – COMPLAINT**

60.    Goldashkin told Plaintiff the following breakdown of her calculated 52 weeks of leave:

a) February 7, 2020-February 19, 2020 = 2 weeks;

b) March 18, 2020 – May 27, 2020, = 10 weeks; and

c) September 27, 2020 – July 1, 2021, = 40 weeks.

61.    On information and belief, on page 2 of Defendant's Administrative Policy 500.401, the

Human Resources Leave of Absence Policy states:

> Maximum time allowed for any leave under this policy will generally be twelve
> (12) months in a rolling 12-month period. Exceptions include, but are not limited
> to the Uniformed Services Leave, *reasonable accommodation consideration under
> the A.D.A. Amendments Act*, *and/or as related to any other applicable state and/or
> federal requirement*. (Emphasis added).

## FIRST CLAIM FOR RELIEF
## EMPLOYMENT DISCRIMINATION BASED ON DISABILITY
## 42 U.S.C. §§ 12101 *et seq.*

62.    Plaintiff incorporates all previous paragraphs herein.

63.    Plaintiff is a person with a disability as defined by the Americans with Disabilities Act

("ADA") 42 U.S.C. §§ 12101 *et seq.* because she has a life-long serious medical condition that

substantially limits a major life activity defined as a physical impairment of the cardiovascular

system that limits multiple bodily functions and limits her ability to perform some manual tasks.

64.    The Plaintiff is qualified for the job because she is a licensed registered nurse ("RN") with

substantial training and can perform the essential functions of her position with or without

accommodations.

65.    Plaintiff is a qualified individual able to perform the essential functions of her job,

demonstrated by the fact that she was working for Defendant over twenty years before the

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

COVID-19 pandemic and could continue her employment during the pandemic with reasonable accommodation.

66.     Plaintiff was subject to adverse employment action when Defendant did not give available positions, forcing her to remain off work and ultimately terminated her employment.

67.     This disability necessitated that Plaintiff is not exposed to COVID-19 as her disability makes her a high risk for severe complications and death.

68.     Plaintiff, in good faith, reported that she suffered a serious medical condition and provided medical documentation to substantiate this request.

69.     Plaintiff reported to her supervisors that she needed a position that would not place her in contact with COVID-19 patients.

70.     Plaintiff's disability was a motivating factor in Defendant's adverse employment action because Defendants knowingly and intentionally delayed Plaintiff's placement in an accommodating position to cause her termination.

71.     Defendant failed to provide reasonable accommodation timely.

72.     Accommodating Plaintiff would not have created an undue hardship because Defendant had numerous open positions that would have accommodated Plaintiff's disability, and they did not assign her to them.

73.     Plaintiff suffered financial harm due to being terminated from her job and is entitled to back pay and front pay in an amount according to proof, but not less than $500,000 (42 U.S.C. §2000e-5).

74.     Plaintiff is entitled to emotional distress damages and compensatory damages in an amount according to proof, but no less than $1,000,000 (42 U.S.C. § 1981a).

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

75.     Plaintiff is entitled to punitive damages according to proof, no less than $300,000 under 42 U.S.C. § 1981a(b)(1)).

76.     Plaintiff is entitled to recover statutory attorney fees and associated costs according to the suit under 42 U.S.C. § 12205.

## SECOND CLAIM FOR RELIEF

### EMPLOYMENT DISCRIMINATION BASED ON DISABILITY
### ORS §§ 659A.112

77.     Plaintiff incorporates all previous paragraphs herein.

78.     As previously pleaded, Plaintiff is an individual with a disability under 42 U.S.C. §§ 12101 *et seq*. and pursuant to ORS 659A.104.

79.     As previously pleaded, Plaintiff is fully qualified for her position.

80.     As previously pleaded, Plaintiff was subject to an adverse employment action, not being placed in accommodating positions and being terminated.

81.     As previously pleaded, Defendant's adverse actions were based on Plaintiff's disability.

82.     As previously pleaded, Defendant failed to accommodate Plaintiff reasonably.

83.     Accommodating Plaintiff would not have created an undue hardship because Defendant had numerous open positions that would have accommodated Plaintiff's disability, and they did not assign her to them.

84.     Plaintiff suffered financial harm due to being terminated from her job and is entitled to back pay and front pay in an amount according to proof, but not less than $500,000 (ORS 659A.885).

85.     Plaintiff is entitled to emotional distress damages and compensatory damages in an amount according to proof, but no less than $1,000,000 (ORS 659A.885).

86.     Plaintiff is entitled to punitive damages according to proof, no less than $300,000 (ORS 659A.885).

87.     Plaintiff is entitled to recover statutory attorney fees and associated costs according to the suit under ORS 659A.885.

### THIRD CLAIM FOR RELIEF
### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS UNDER ADA
### 42 U.S.C. §§ 12101-12117

88.     Plaintiff incorporates all prior paragraphs.

89.     As previously pleaded, Plaintiff had a disability as defined by the ADA.

90.     Plaintiff requested a reasonable accommodation multiple times in writing and in person to Defendant's representatives.

91.     Defendant was aware of Plaintiff's request for accommodation and corresponded with her about her request.

92.     Defendant failed to engage Plaintiff in good faith interactions because Defendant had available positions but failed to place Plaintiff in the open positions.

93.     Had Defendant properly placed Plaintiff in available positions, Plaintiff could perform the essential functions of the open positions.

94.     The failure of Defendant to engage Plaintiff in good faith interactions resulted in Plaintiff's termination.

95.     Plaintiff is entitled to back pay and front pay according to proof but no less than $500,000.

96.     Plaintiff is entitled to recover compensatory damages, including emotional distress damages according to proof, but no less than 1,000,000 (42 U.S.C. § 1981a).

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

97.    Plaintiff is entitled to recover punitive damages according to proof, no less than $300,000 (42 U.S.C. § 1981a(b)(1)).

98.    Plaintiff is entitled to recover statutory attorney fees and associated costs according to the suit under 42 U.S.C. § 12205.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS UNDER OREGON ADA
## ORS 659A.112

99.    Plaintiff incorporates all previous paragraphs.

100.    As previously pleaded, Plaintiff has a qualified disability

101.    As previously pleaded, Plaintiff requested a reasonable accommodation in writing and in person to Defendant.

102.    As previously pleaded, Defendant knew and had actual knowledge about Plaintiff's request for reasonable accommodation.

103.    As previously pleaded, Defendant failed to engage in good faith interactive process with Plaintiff to identify and implement a reasonable accommodation that would enable Plaintiff to perform the essential functions of her job.

104.    Defendant's failure to engage in good faith interactive process resulted in actual harm to Plaintiff when Defendant terminated Plaintiff's employment.

105.    Plaintiff suffered financial harm due to being terminated from her job and is entitled to back pay and front pay in an amount according to proof, but not less than $500,000 (ORS 659A.885).

106.    Plaintiff is entitled to emotional distress damages and compensatory damages in an amount according to proof, but no less than $1,000,000 (ORS 659A.885).

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

107    Plaintiff is entitled to punitive damages, according to proof, no less than $300,000 (ORS 659A.885).

108.    Plaintiff is entitled to recover statutory attorney fees and associated costs according to the suit under ORS 659A.885.

## FIFTH CLAIM FOR RELIEF
## DISCRIMINATION BASED ON SICK LEAVE USE
## ORS 653.641

109.    Plaintiff incorporates all prior paragraphs.

110.    Plaintiff used accrued and available protected sick leave while employed by Defendant to take time off for her serious medical condition.

111.    Plaintiff suffered an adverse employment action when Defendant inaccurately calculated the use of her protected sick leave and, after that, terminated her employment.

112.    State and federal law protected Plaintiff's use of sick leave.

113.    Defendant knew or should have known about Plaintiff's protected activity of using her protected leave.

114.    As previously pleaded, Defendant failed to provide reasonable accommodation to Plaintiff that would have allowed Plaintiff to use her sick leave without suffering an adverse employment action.

115.    Plaintiff suffered damages due to the discrimination in the form of lost back pay and front pay, according to proof (ORS 659A.885).

116.    According to proof, emotional distress damages and compensatory damages are no less than $1,000,000 (ORS 659A.885).

///

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

117    Plaintiff is entitled to punitive damages according to proof, no less than $300,000 (ORS 659A.885).

118.    Plaintiff is entitled to recover statutory attorney fees and associated costs according to the suit under ORS 659A.885.

**SIXTH CLAIM FOR RELIEF**
**COMMON LAW WRONGFUL TERMINATION**

119.    Plaintiff incorporates all previous paragraphs.

120.    Plaintiff pleads in the alternative to Claims One through Five, a common law claim for Wrongful Termination.

121. Plaintiff suffered damages due to the discrimination in the form of lost back pay and front pay, according to proof but not less than $500,000 (ORS 659A.885).

122.    According to proof, emotional distress damages and compensatory damages are no less than $1,000,000 (ORS 659A.885).

123.    According to proof, Plaintiff is entitled to punitive damages of no less than $300,000 (ORS 659A.885).

124.    Plaintiff is entitled to recover statutory attorney fees and associated costs according to the suit under ORS 659A.885.

///

///

///

///

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant, awarding Plaintiff economic and noneconomic damages as determined at trial, but not less than $1,800,000.00, together with Plaintiff's costs, disbursements, attorney and expert witness fees under 42 U.S.C. §12205 and ORS 659A.885, and for such other relief the Court deems equitable and just.

Plaintiff hereby demands trial by jury on all issues so triable.


DATED this 27th day of March 2023.

DATED this 27th day of March 2023.

Respectfully submitted,

**EMPLOYMENT LAW PROFESSIONALS NW LLC.**

By:    */s/ Jameson Gideon*
Jameson E. Gideon, OSB #202871
Email: jameson@elpnw.com
Randy J. Harvey, OSB #116714
Email: randy@elpnw.com
Patrick G. Conroy, OSB #223806
Email: patrick@elpnw.com


20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
Telephone: 503-822-5340
Facsimile: 503-433-1404

*Of Attorneys for Plaintiff*
Amanda Zabloudil



**VAL HOYLE**
Labor Commissioner

December 27, 2022

AMANDA ZABLOUDIL
C/O EMPLOYMENT LAW PROFESSIONALS
20015 SW PACIFIC HWY #221
SHERWOOD, OR 97140

RE:    Complainant:    Amanda Zabloudil
       Respondent:     Legacy Health
       Case #:         DPEMDP211227-12404
       EEOC #:         38D-2022-00163C

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing:** December 27, 2022

Enclosure(s)
cc:    Jameson E Gideon, Complainant's Attorney

   
**Zabloudil v. Legacy Health System CPC, LLC**
**USDC Case No. 3:23-cv-00442**
**EXHIBIT A**
**Page 1 of 1**